**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
MILLENNIUM PRODUCTS GROUP, LLC.,

                              Plaintiff,

       -against-                                **COMPLAINT**

                                                                15-CV-____

PLAYTIME SALES AND MARKETING, LLC.,
LEN SOYKA,

                              Defendants.
-------------------------------------------------------------------X

Plaintiff, by its attorney, Todd Wengrovsky, respectfully sets forth and alleges:

**I.**
**JURISDICTION**

1. This is an action for infringement of a trade dress under 15 USCS 1051, et. seq. The Court has jurisdiction over the claim under 15 USCS 1051 et seq., as well as 28 USCS 1331(a) and 1338(a), 28 USCS 1338(b), and the doctrine of pendent jurisdiction. This Court has personal jurisdiction over Defendants in that Defendants' limited liability company was formed in New York, Defendants transact business in the State of New York and this District, and Defendants have committed tortious acts within the State, and/or without the State causing injury within the State.

**II.**
**VENUE**

2. Venue is vested in this Court pursuant to 28 USCS 1391 and 1400 in that the claims asserted here arose within this district, and that Plaintiff's principal place of business is located within this district.

## III.
## THE PARTIES

3. At all relevant times, Plaintiff Millennium Products Group, LLC. ("MPG") is and was a limited liability company organized and existing under the laws of the State of New York. Plaintiff's address is 145 Kennedy Drive, Hauppauge NY 11788.

4. Upon information and belief, at all relevant times, Defendant Playtime Sales And Marketing, LLC. is and was a limited liability company organized and existing under the laws of the State of New York, with a current address of 331 Piermont Road, Norwood, NJ 07648.

5. Upon information and belief, Defendant Len Soyka is an individual and principal of Playtime Sales And Marketing, LLC. residing in the State of New Jersey.

6. Upon information and belief, as the founder and/or owner of Playtime Sales And Marketing, LLC., Len Soyka is the conscious, moving force behind the activities of the company and of its ongoing infringement. Playtime Sales And Marketing, LLC.'s decisions are made by Soyka, the daily business of the company is under the control and direction of Soyka, and the company's actions concerning the ongoing infringement of the trade dress were instigated by, and continue at the behest of Soyka, who directly benefits financially from such activities.

## IV.
## BACKGROUND AND FACTS

### A. Plaintiff And Its Distinctive Trade Dress

7. Plaintiff Millennium Products Group, LLC. is a well-known importer and distributor of consumer goods, including many toy items. Such toys include "monster trucks" which feature large moveable wheels, sounds, and light. One prominent series of monster trucks distributed by MPG is the "BIGFOOT" product line, which is a result of MPG being granted license of that famous trademark from BigFoot 4X4, Inc.

8. After licensing the BIGFOOT trademark, MPG designed unique packaging and trade dress for the product line, which is shown in the photographs of **EXHIBIT A** attached hereto. Plaintiff has used such trade dress in United States commerce since February 13, 2013.

9. Plaintiff also filed a United States Trademark Application for the trade dress on August 5, 2015, Serial Number 86/715,610. A copy of the filing is filed herewith as **EXHIBIT B**. The application identifies the goods in question as simply "toy vehicles."

10. Plaintiff's trademark filing describes the proprietary trade dress as follows:

"The color(s) Blue, black, grey is/are claimed as a feature of the mark. The mark consists of the trade dress of product packaging. The dotted lines show the placement of material other than the mark and are not a part of the mark. The package configuration consists of a large transparent panel or window through which the product is seen which are not a part of the mark. The mark consists of a border along the top and front of the packaging appearing to be made from a two tone black and grey diamond plated metal sheet. There is a horizontal border of blue along the top rear of the package. There are decorative blue corners on each side of the top of the front of the packaging, as well as on the lower left corner of the front of the packaging. There is a blue circle bordered by a grey circle in the lower left corner of the front and the rear left corner of the top of the packaging. A picture of a blue truck appears on the decking in the right lower front corner."

11. Regarding commercial usage of the trade dress, as a result of widespread promotion and usage since February 13, 2013, Plaintiff's packaging has become associated <u>with MPG</u> in the industry. This is because the product has always including MPG's marking prominently thereon.

**B. Defendants' Usage Of Plaintiff's Trade Dress**

12. Defendant Playtime Sales And Marketing, LLC. and Len Soyka are using Plaintiff's trade dress in connection with the identical goods listed on Plaintiff's Trademark Application – toy vehicles.

13. For the purposes of example only, attached hereto as **EXHIBIT C** are a series of photographs of Defendants' product packaging.

14. As shown, Defendants' packaging is <u>nearly identical</u> to that of Plaintiff, which, as described later herein, is no coincidence.  Specifically, Defendants' packaging copied the following elements from Plaintiff's trade dress:

   - a border along the top and front of the packaging appearing to be made from a two tone black and grey diamond plated metal sheet;

   - a horizontal border of blue along the top rear of the package;

   - decorative blue corners on each side of the top of the front of the packaging, as well as on the lower left corner of the front of the packaging;

   - a blue circle bordered by a grey circle in a corner of the front and corner of the top of the packaging; and

   - a picture of a blue truck on the decking in the right lower front corner.

15. Because Defendants used the above design elements in connection with toy vehicles, Defendants' goods are squarely within the identification of services listed on Plaintiff's Trademark Application.

16. Moreover, upon information and belief, Defendants' first usage of this packaging was in the summer of 2014, well after Plaintiff's first usage of same. Thus, there is no question that Plaintiff has preeminent rights to the trade dress.


### C. Defendants' Infringement Of Plaintiff's Trade Dress

17. Per 15 U.S.C. 1114, a plaintiff's trademark is protected by federal law against infringement by use of colorable imitations of the mark which are "likely to cause confusion, or to cause mistake, or to deceive."

4

18. Here, consumers are unable to detect *any* differences between the trade dress of Plaintiff and Defendants. As such, prospective clients are likely to be confused, and/or assume an affiliation with Plaintiff when exposed to Defendants' products.

19. Such is especially the case since Plaintiff's and Defendants' goods occupy the identical markets. Thus, the goods are in such proximity that consumer confusion is the only logical result.

20. As such, prospective customers of Plaintiff and Defendants will begin by assuming there is an affiliation between Plaintiff and Defendants. Thereafter, they are unlikely to conduct sufficient research to confirm that the parties are unaffiliated.

21. Moreover, as Defendants continue to expand their advertising and promotions, consumer confusion will only increase, to Plaintiff's detriment.

22. Therefore, there can be no dispute that Defendants' usage of the packaging creates a likelihood of confusion with Plaintiff's trade dress, and that Defendants have infringed, and are still infringing same.

### D. Damages For Trade Dress Infringement

23. Plaintiff has expended significant time, effort, and resources in promoting the trade dress shown in **EXHIBIT A** herein. Defendants are free riding on Plaintiff's trade dress, enjoying revenues from using same without the expenditures associated with developing it. Plaintiff is being damaged by Defendants' infringement, including lost revenues and damage to business reputation.

24. Accordingly, Plaintiff seeks damages in the form of: (1) Defendants' profits with interest from the inception of Defendants' usage of the packaging through conclusion of this action; (2) the damages sustained by Plaintiff; and (3) costs of the action pursuant to 15 U.S.C. § 1117(a).

25. In addition, pursuant to 15 U.S.C. § 1117(b), Plaintiff also demands treble damages and attorneys fees due to Defendants' bad faith and ongoing willful, egregious infringement. This is due to Defendants' personal relationship with Plaintiff and Defendants' scheme to palm off of Plaintiff's sales.

26. The first supplier of MPG's BIGFOOT products was the "Kingmark" company, located in Hong Kong. Through a collaboration with Kingmark, in early 2013, MPG set up a Hong Kong showroom which featured the BIGFOOT product line that MPG had recently developed.

27. At such time, Defendant Len Soyka was an independent sales agent working out of New Jersey. Specifically, Soyka was a commission sales representative who had represented various product lines for MPG. This is proven by **EXHIBIT D** attached hereto, which is a series of communications between Plaintiff and Defendants outlining the sales agency agreement.

28. MPG asked Soyka to represent the BIGFOOT product line, and Soyka began to do so. However, upon information and belief, Soyka then convinced Kingmark to circumvent MPG and sell the product only through Soyka *directly*. Corroborating same is that fact that one of MPG's principals observed Len Soyka in the Hong Kong showroom taking notes and beginning to work with Kingmark.

29. Soyka and his business, Defendant Playtime Sales And Marketing, LLC., then apparently commercialized their own competing product in the summer of 2014 utilizing Plaintiff's distinctive trade dress as the starting point, inserting their own company information into the trade dress. This was confirmed when a principal of MPG did product presentations to local toy companies, only to find that such companies "already had the product."

30. The first such company was "L & R" on Long Island, *which was actually one of the retail accounts that Soyka had worked on behalf of MPG*, per the correspondence of **EXHIBIT D**.

31.  The second company was Shepher Distributors And Sales Corp. in Brooklyn, New York, *which was another of the retail accounts that Soyka had worked on behalf of MPG*, per the correspondence of **EXHIBIT D**.  When visiting the Shepher showroom, a principal of MPG saw the infringing product, specifically the product sample shown on the first page of **EXHIBIT C** herein, which literally includes the name "LEN SOYKA" as "REPRESENTATIVE" thereon. Shepher's promotion of Defendants' infringing product is shown in **EXHIBIT E** attached hereto.

32.  In sum, Soyka, with inside knowledge, went directly to MPG's product source - *and to MPG's retail customers* - to circumvent MPG for financial gain, and to MPG's obvious detriment.

33.  Even if Defendants were to obtain similar monster truck toys from a legitimate supply source, Defendants could have created packaging design of their own at nominal cost. Instead, Defendants wanted to be confused with Plaintiff, in an effort to palm off of Plaintiff's business and wrestle away Plaintiff's retail accounts.

## AS AND FOR A FIRST CAUSE OF ACTION

34. Plaintiff repeats and reiterates each and every allegation of paragraphs 1 through 33 set out herein, with the same force and effect as if fully set forth therein.

35. Plaintiff has made a substantial investment of time, money, skill, and effort to create a strong public association with the distinctive trade dress identified herein, as used in connection with toy vehicles.

36. Plaintiff filed United States Trademark Application Number 86/715,610 for the trade dress on August 5, 2015.

37. During Plaintiff's usage of the trade dress, markings appeared on same serving as notice to the public that the trade dress was protected by the trademark laws.

38. Defendants are using Plaintiff's trade dress in connection with the same goods offered by Plaintiff.

39. Defendants' usage of Plaintiff's trade dress is likely to cause confusion among relevant consumers.

40. Defendants have violated the terms of the Lanham Act, codified at 15 U.S.C. 1051, et seq.

41. Plaintiff has suffered and will to continue to suffer economic losses due to the trademark infringement of Defendants, in violation of 15 U.S.C. 1051, et seq.

42. Plaintiff is unable to ascertain the amount of its actual damages at this time.

## AS AND FOR A SECOND CAUSE OF ACTION

43. Plaintiff repeats and reiterates each and every allegation of paragraphs 1 through 42 set out herein, with the same force and effect as if fully set forth therein.

44. Plaintiff used its substantial skill, resources, experience, and labor to design and create the distinctive product packaging and trade dress identified herein.

45. Defendants gained access to Plaintiff proprietary trade dress by obtaining Plaintiff's confidence and trust through its dealings with Plaintiff, with Defendants working as Plaintiff's sales representative on an ongoing basis.

46. Defendants misappropriated Plaintiff's skill, resources, experience, and labor to distribute and sell competing products using nearly the identical trade dress as that of Plaintiff.

47. By using Plaintiff's proprietary property to compete against Plaintiff, Defendants misappropriated a valuable commercial advantage belonging to Plaintiff.

48. Defendants have been unjustly enriched by their acts of misappropriation.

49. As a direct and proximate result of Defendants' acts of misappropriation, Plaintiff has incurred, and will continue to incur, substantial monetary damages in an amount to be determined at trial, comprising, without limitation, Plaintiff's lost sales, Defendants' wrongfully-gained profits, and the value of Plaintiff's skill, resources, experience, and labor relative to the designing of the distinctive trade dress.

50. Defendants above-referenced conduct will cause Plaintiff severe and irreparable harm for which it has no adequate remedy at law unless Defendants are enjoined by the Court.

51. The willful and malicious nature of Defendants' conduct entitles Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff requests that:

A. It be adjudged that Plaintiff's trade dress has been infringed by Defendants;

B. Defendants and their officers, directors, agents, representatives, attorneys and all persons acting and claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation with them, and each of them, be permanently enjoined from using Plaintiff's trade dress and any and all packaging confusingly similar thereto in the United States;

C. Defendants be required to account for their profits from infringement of Plaintiff's trade dress;

D. That the Court award Plaintiff damages against Defendants in an amount adequate to compensate Plaintiff on their first cause of action;

E. That the Court award Plaintiff damages against Defendants in an amount adequate to compensate Plaintiff on their second cause of action;

F. That the Court award Plaintiff costs and disbursements of this action as provided by 15 U.S.C. 1117(a);

G. That the Court increase the amount of damages found or assessed for Defendants' infringement by three times, and award reasonable attorneys fees, on account of the willful, intentional, and deliberate character of Defendants' infringing acts, as provided by 15 U.S.C. 1117(b); and

H. That the Court award Plaintiff such other and further relief as the Court deems just, proper, and equitable.

Dated:   Calverton, New York
         August 19, 2015

/s/ Todd Wengrovsky
Todd Wengrovsky
Law Offices of
Todd Wengrovsky, PLLC.
285 Southfield Road, Box 585
Calverton, NY 11933
Tel (631) 727-3400
Fax (631) 727-3401
contact@twlegal.com